ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | CASE NO.   1:10CR416 |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| RONALD ROMANINI, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

**I.  Introduction**

On September 23, 2010, Defendant Ronald Romanini was charged through an information with one count of bribery concerning programs receiving federal funds.  On October 20, 2010, Romanini appeared before the Court and entered a guilty plea to the information.  On March 15, 2011, the Court held a hearing based on the fact that Romanini had entered into a superseding plea agreement with.  While the Court accepted Romanini's guilty plea, it did not approve of the superseding plea agreement.  On May 25, 2011, the Court sentenced Romanini to 41 months incarceration.  This memorandum will serve to supplement the Court's oral pronouncement of sentence.

**II. Sentencing Process**

Criminal sentencing is often described as a three-step process.  A district court must begin the process by calculating the advisory guideline range suggested by the United States Sentencing Commission.  *Rita v. United States*, 551 U.S. 338, 351 (2007) ("The sentencing judge… will normally begin by considering the presentence report and its interpretation of the Guidelines.").

In so doing, the Court must determine the offense level for the crimes for which the defendant has been convicted and the defendant's criminal history. *See United States v. Boyd*, No. 3:07-CR-3, 2008 WL 4963198, at *14-16 (E.D.Tenn. Nov. 18, 2008).

Next, the Court must determine whether a variance or departure from the advisory guideline range would be appropriate. *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

> Finally, a sentencing court must independently evaluate each of the factors in 18 U.S.C. § 3553(a), which details the considerations that a district court must weigh before sentencing a criminal defendant. Although the Guidelines form a starting point in the district court's analysis under 18 U.S.C. § 3553(a), a district court may not presume that the sentence suggested by the Guidelines is appropriate for an individual criminal defendant.  A district court may hear arguments by prosecution or defense that the Guidelines sentence should not apply.  In this way, a sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. Ultimately, however, a court must exercise its independent judgment in sentencing a defendant.

*United States v. Stern*, 590 F.Supp.2d 945, 949 (N.D.Ohio 2008) (citations and quotations omitted).

### III.  Advisory Guideline Calculations

Romanini disputes two aspects of the Court's calculation of his advisory guideline range. The Court will separately explain its ruling on each of Romanini's challenges.

  A.  <u>Acceptance of Responsibility</u>

During sentencing, the Court declined to reduce Romanini's advisory guideline range for acceptance of responsibility under U.S.S.G. § 3E1.1.  Defendant had previously argued that such a reduction was appropriate despite the existence of an enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  The Court finds no merit in this argument.

U.S.S.G. § 3E1.1 provides as follows:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Additionally, Application Note 4 to U.S.S.G. § 3E1.1 provides:

Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

Romanini contends that he falls with the range of extraordinary cases that warrants application of this reduction. The Court disagrees.

In support of his argument, Romanini relies upon *United States v. Gregory*, 315 F.3d 637 (6th Cir. 2003). The Court finds the facts herein to be readily distinguishable from *Gregory*.

In determining whether a case is "extraordinary" as explained in Application Note 4 above, this Court must "look at the relationship between [the] obstructive conduct and [the] acceptance of responsibility." *Id.* at 640. "Appropriate considerations for determining whether a reduction is warranted include the defendant's truthful admission of the offense conduct, the defendant's voluntary assistance to authorities in resolving the offense, and the timeliness of the defendant's conduct in affirmatively accepting responsibility for his actions." *Id.* In holding that the defendant in *Gregory* was entitled to a downward adjustment, the Circuit described his conduct as follows:

3

> With those cases in mind, we find that Gregory's situation was an extraordinary one as contemplated by the Guidelines. All of his obstructive conduct predated his indictment, and he has never denied his own responsibility and guilt. Long before he was ever charged with an offense, Gregory cooperated with prison officials, and he pleaded guilty. He certainly never did something so extreme as to withdraw his plea. He is entitled to a downward adjustment for acceptance of responsibility.

*Id.* at 641. The Sixth Circuit has also acknowledged that "as long as the defendant's acceptance of responsibility is not contradicted by an ongoing attempt to obstruct justice, the case is an extraordinary case within the meaning of Application Note 4 and simultaneous adjustments under §§ 3C1.1 and 3E1.1 are permissible." *Id.* at 640-41 (quoting with approval *United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994)).

The Court finds that *Gregory* is distinguishable for several reasons. First, Gregory's obstructive conduct all *predated* his indictment. Moreover, Gregory voluntarily "undid" his obstructive conduct. In stark contrast, Romanini made false statements to an official during interviews on January 29, 2009 and August 20, 2009. Romanini's information was then filed on September 23, 2010. Romanini then pled guilty before this Court on October 20, 2010. At no time following the filing of the information did Romanini "undo" his obstructive conduct. In fact, it was not until February 4, 2011, more than 2 years after Romanini's initial obstructive conduct, that Romanini was truthful with the Government.

Even if the Court were to overlook the clear untimely nature of Romanini's alleged acceptance, the Court cannot overlook the fact that Romanini's acceptance can hardly be viewed as a voluntary act that was engaged in to demonstrate acceptance. Instead, Romanini only became honest with officials after he was confronted with information that was learned following Frank Russo's guilty plea. As such, the record in this matter certainly reveals that Romanini was

4

content to keep his lies hidden and only admitted them when he had no other choice. In that respect, the Court finds the matter to be closely analogous to the facts set forth in *United States v. Jeross*, 521 F.3d 562 (6th Cir. 2008). In denying Jeross the downward adjustment for acceptance, the Circuit noted that "Jeross did not begin cooperating with the government until May of 2004, shortly after the total offense level recommended in his PSR was revised upward as a result of his threatening conduct." *Id.* at 582. "Jeross on these facts has failed to meet the 'exacting standard' under *Gregory* of showing that he is entitled to an acceptance-of-responsibility reduction after having obstructed justice." *Id.* Similarly, the defendant in *United States v. Adams*, 321 Fed. Appx. 449 (6th Cir. 2009) was denied a downward adjustment for acceptance of responsibility. In upholding that decision, the Circuit noted as follows:

> Here, Mr. Adams's obstruction of justice was arguably even more significant than that of the *Jeross* defendant. There was no suggestion in *Jeross* that the defendant continued to obstruct justice after he began to assist the investigators. Mr. Adams, in contrast, continually lied to the government long after he purportedly began "cooperating" with the investigation. But even if we give Mr. Adams the benefit of the doubt that he truly "came clean" once he submitted to the polygraph test, that cooperation was no more significant than the debriefings provided by the defendant in *Jeross*, who was not found eligible for the acceptance-of-responsibility reduction.

*Id.* at 461. In so holding, the Circuit also distinguished its own prior dicta in *United States v. Harper*, 246 F.3d 520 (6th Cir. 2001) in which the Court had given examples of extraordinary situations.

> For instance, a defendant awaiting trial might escape custody but then immediately turn himself in to authorities. *Harper*, 246 F.3d at 528. Similarly, the court noted that a defendant might qualify if he "immediately confessed after writing an obstructive letter and then offered to plead guilty." *Id.* Neither of these examples is even arguably analogous to Mr. Adams's continual obstruction of justice after agreeing to cooperate with the government's investigation.

5

*Adams*, 321 Fed. Appx. at 460.

Romanini's fact pattern is essentially a hybrid of the patterns presented in *Adams* and *Jeross*. Like the defendant in *Adams*, Romanini continued to obstruct justice after he purportedly began "cooperating." Like the defendant in *Jeross*, Romanini did not begin truly cooperating with the Government until he was confronted with independent evidence of his obstructive conduct. And unlike the examples routinely given by the Circuit and present in *Gregory*, there was nothing approaching "immediate" in this matter. As noted above, Romanini was clearly content to live with his lies to investigators and maintain his obstructive conduct. It was not until his hand was forced by extrinsic evidence of his conduct that he finally cooperation. As such, Romanini does not meet the exacting standard set forth in *Gregory* and is not an extraordinary case as described in Application Note 4 to U.S.S.G. § 3E1.1. Accordingly, the Court declines to adjust his guideline range downward for acceptance of responsibility.

B. <u>Substantial Assistance</u>

Romanini also argued during sentencing that he should be awarded a four-level downward adjustment for substantial assistance under U.S.S.G. § 5K1.1. The Court, however, found that a two-level adjustment was appropriate for the reasons that follow.

U.S.S.G. § 5K1.1 provides:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance

6

rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

Application Note 3 to this Guideline provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain."

The Court acknowledges that Romanini provided information that was valuable in some manner to the Government. The Government's counsel explained that Romanini gave specific information about a scheme devised by Frank Russo to conceal the origins of certain monies. The Government further acknowledged that the information about this scheme was first learned through Romanini and was information that encouraged Russo to ultimately plead guilty. As such, some downward adjustment is appropriate.

However, there are numerous factors that weigh heavily against a four-level adjustment. First, the Government candidly admitted that somewhere between 10 and 20 individuals had agreed to cooperate against Russo. Thus, while Romanini may have provided unique information, it can hardly be said that he was instrumental in the investigation of Russo. Furthermore, the Government admitted, as it must, that Romanini's usefulness as witness against Russo was severely undermined by his initial false statements to investigators. To that extent, the Court fully agrees. There can be no doubt that Romanini compromised his ability to be an

7

effective witness by lying to investigators.

The damage done to Romanini's ability to testify must also be placed into context. Romanini effectively committed a federal offense, making false statements to a law enforcement official in violation of 18 U.S.C. § 1001. Romanini, however, was not charged with that offense. Instead, the Government chose to account for this conduct utilizing relevant conduct under the sentencing guidelines. The lack of charges would clearly be attacked by defense counsel in any future proceeding.

Additionally, "the truthfulness, completeness, and reliability" of Romanini's cooperation does not warrant a four-level adjustment. Romanini's initial cooperation turned out to be incomplete. While it appears that Romanini provided useful information about Russo, he also minimized his own culpability. Moreover, he did not reveal all of the criminal conduct involving Russo of which he was aware. As a result, neither the Government nor Romanini could argue that his initial assistance was complete or entirely truthful. Finally, Romanini's later assistance provided minimal new information to the Government. Instead, Romanini essentially admitted that Russo had given truthful information about their interactions.

For the reasons stated during the sentencing hearing and those detailed herein, Romanini is not entitled to a four-level adjustment. Instead, for providing incomplete information, minimizing his ability to be an effective witness, and being only one small part of a group of individuals providing information against Russo, only a two-level adjustment is appropriate.

C. Advisory Guideline Summary

The parties did not contest the Court's remaining Guideline computations. As a result, Romanini's advisory range is calculated as follows. His base offense level is 12 pursuant to

U.S.S.G. § 2C1.1(a)(2).  A two-level increase for more than one bribe is required by U.S.S.G. § 2C1.1(b)(1).  A four-level increase is appropriate because the total amount of the bribes at issue falls between $10,000 and $30,000.  U.S.S.G. § 2C1.1(b)(2).  Another four-level increase is appropriate because the bribes involved a public official in a high-level decision-making position.  U.S.S.G. § 2C1.1(b)(3).  Finally, a two-level increase for obstruction of justice is appropriate.  U.S.S.G. § 3C1.1.  Accordingly, Romanini's adjusted offense level is 24.  Allowing for the two-level adjustment for substantial assistance, Romanini's final offense level is 22.  At a Criminal History Category I, Romanini's advisory guideline range is 41 to 51 months.

**IV.  Kinds of Sentences Available**

The final calculated advisory guideline range of imprisonment is 41 to 51 months.  The statutory maximum for the sole count in the information is 120 months.  The maximum fine for the offense is $250,000, and supervised release of up to three years may be imposed.

**VI. § 3553(a) Factors**

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its judgment to determine an appropriate sentence and must offer a reasoned explanation for the sentence.  Based upon those factors, the Court finds that a sentence at the lower end of the advisory guideline range is appropriate under the facts presented in this matter.

In reaching its conclusion, the Court considered the nature and circumstances of the offense and the history and characteristics of the defendant.  The Court also reviewed the need for the sentence imposed: a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the Defendant; and c) to provide the

Defendant with needed educational or vocational training, medical care, and/or other correctional treatment in the most effective manner.

During the sentencing hearing, the Court detailed its analysis of each of the § 3553(a) factors. This memorandum will serve only to supplement that discussion.

During the sentencing hearing, the Court fully discussed the scope and depth of the corruption scandal that has plagued Cuyahoga County. Such a discussion will not be reiterated herein. However, it is important to note Romanini's role in that scandal. On at least 8 separate occasions, Romanini bribed a public official. Then, after allegedly cooperating with officials, Romanini attempted to minimize his own culpability by lying to investigators.

Furthermore, the Court cannot fully accept Romanini's view that he received nothing of value from his bribes. Romanini has argued that his bribes were effectively selfless acts – i.e., he was simply attempting to help a friend or family member secure a job and received nothing in return. The Court acknowledges that Romanini received no *direct financial* benefit from these transactions, but it cannot agree that Romanini received no benefit. First, if Romanini felt compelled to assist these individuals, by securing them employment through bribery he relieved himself of the obligation to assist the individuals using his own wealth. Moreover, he received the intangible benefit of enhancing his reputation among his colleagues and family. He no doubt increased his own standing in society through his ability to obtain jobs for friends when they could not do so on their own. As such, the Court cannot agree that Romanini received no benefit whatsoever from his bribes.

However, the Court also cannot overlook the positive deeds performed by Romanini throughout his life. During sentencing, roughly 50 individuals showed up in support of

Romanini, a demonstration of the positive influence he has had on many that he has encountered. Those same examples are present in the numerous letters of support offered for Romanini. Those letters demonstrate Romanini's commitment to charities such as the Ronald McDonald House and Santa's Hide-A-Way Hollow. Based upon those letters and Romanini's own statement, it is clear that he has many positive attributes.

Romanini's statement made clear that any term of imprisonment would be sufficient as a form of specific deterrence. However, the Court must also be mindful of general deterrence. In this matter, Romanini bribed a public official on at least 8 occasions. He secured jobs for friends and family through bribery. It is unclear whether these individuals were qualified, and it is further unclear whether positions were available or simply created as a part of the bribery scheme. It is clear though that the County suffered. Romanini assisted in perpetuating a culture of corruption. He then lied about his full involvement.

A full review of Romanini's positive contributions to society and his criminal activities leads to the conclusion that a sentence at the low end of the advisory guidelines is appropriate. Romanini's good deeds do not sufficiently outweigh his crimes to warrant a downward variance. They instead mitigate for a lower guideline sentence. Accordingly, the Court imposed the lowest end of the advisory guideline range, a term of 41 months incarceration.

**VII.  Sentencing Disparities**

The Court has identified no sentencing disparities for similarly situated defendants. In fact, the Court thoroughly reviewed similar defendants within this corruption probe and its related investigations. After fully considering those sentences that have been imposed and Romanini's conduct, the Court finds no disparities.

**VIII. Conclusion**

Based upon the above reasoning, pursuant to the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553, it is the judgment of the Court that the Defendant Ronald Romanini is hereby committed to the Bureau of Prisons for a term of 41. The Court stated the remaining terms of Romanini's sentence on the record and in its journal entry of conviction. Accordingly, it declines to reiterate those terms herein.

    IT IS SO ORDERED.


| | |
|---|---|
|  June 20, 2011 | /s/John R. Adams |
| Date | JOHN R. ADAMS |
| | UNITED STATES DISTRICT JUDGE |