IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>RONALD ROMANINI<br><br>    Defendant. | CASE NO. 1:10-CR-00416<br><br>JUDGE JOHN R. ADAMS<br><br><br>DEFENDANT RONALD ROMANINI'S<br>RE-SENTENCING MEMORANDUM |

I.   INTRODUCTION

Ronald Romanini is a humbled man who comes before this Court for re-sentencing. At his May 25, 2011 sentencing hearing, the Government recommended and Mr. Romanini sought a 3-level reduction to his sentencing guideline range for acceptance of responsibility. This Court declined to award those points due to Mr. Romanini's obstructive conduct and failure to provide the Government with a complete description of his illegal activity until confronted. Mr. Romanini cannot and does not dispute his failures in this regard and will not argue for this Court to award him the acceptance of responsibility points previously sought based upon the record before this Court 20 months ago. Indeed, it would seem that only in NOT arguing those points can Mr. Romanini truly be said to be accepting responsibility.

However, Mr. Romanini does submit that this Court should award him additional points for his cooperation with the Government. The information Mr. Romanini provided to the Government was more than mere corroborative evidence. Instead, Mr. Romanini provided fresh information that formed the basis of new charges against Frank Russo for obstructing the investigation against him and for accepting a bribe in the form of a roof. The Government has

already described Mr. Romanini's cooperation in this regard as making their case against him "a lot stronger" and "a unique contribution to the Russo investigation."

The role Mr. Russo played in the culture of corruption within Cuyahoga County cannot be understated. Since pleading guilty to the Information that included the two Counts derived from Mr. Romanini, Mr. Russo became an important Government witness against former Cuyahoga County Court of Common Pleas Judges Bridget McCafferty and Steven Terry as well as former Commissioner Jimmy Dimora. Because Mr. Romanini's cooperation, according to the prosecution, "was an important factor" toward bringing about Mr. Russo's plea and thus his subsequent cooperation, reconsideration of the Government's recommendation for additional points for cooperation is warranted.

II. **BASED UPON THE APPELLATE COURT'S GENERAL REMAND OF RONALD ROMANINI'S SENTENCE, THIS COURT IS PERMITTED TO CONDUCT A *DE NOVO* REVIEW TAKING INTO ACCOUNT THE EVIDENCE PREVIOUSLY BEFORE THE COURT AS WELL AS NEW RELEVANT EVIDENCE**

On October 17, 2012, the Sixth Circuit Court of Appeals vacated Mr. Romanini's sentence and remanded his case to this Court for re-sentencing. *U.S. v. Romanini*, 2012 WL 4944772 (C.A. 6 Ohio). In so doing, the Court of Appeals expressed its satisfaction that the Court would "re-visit the matter with a completely open mind at the *de novo* resentencing . . . ." *Romanini* at * 10, quoting, *U.S. v. Garcia-Robles*, 640 F.3d 158, 168 (6th Cir. 2011) (quoting, *U.S. v. Faulks*, 201 F.3d 208, 209 (3rd Cir. 2000).

In *Garcia-Robles*, the Sixth Circuit explained that "absent explicit limitations in the appellate court's mandate, an order vacating a sentence and remanding the case for resentencing directs the sentencing court to *begin anew*, so that fully *de novo* resentencing is entirely appropriate." *Garcia-Robles*, 640 F.3d at 166, quoting, *U.S. v. Moore*, 38 F.3d 1419, 1422 (6th Cir. 1994). (*See also*, *U.S. v. Sandlin*, 96 Fed.Appx. 388, 390-91 (6th Cir. 2004) (holding that

where "[t]he Sixth Circuit remanded [defendant's] case to the district court for further proceedings consistent with this opinion," the remand was general); (*U.S. v. Four Pillars Enterprise Co., Ltd.*, 253 Fed.Appx. 502, 507 (6th Cir. 2007)) (holding that "[w]hen the Sixth Circuit vacates a sentence and remands to the district court for 're-sentencing,' that order is considered a general one that allows the district court to resentence the defendant *de novo*.").

When the district court resentences a defendant *de novo*, "the district court may redo the entire sentencing process, including considering new evidence and issues." *Garcia-Robles*, 640 F.3d at 166, quoting, *Moore*, 131 F.3d at 597-598. *See also*, *U.S. v. Shull*, 793 F.Supp.2d 1048, 1058, n. 6 (S.D. Ohio 2011) (holding that "following a general remand for *de novo* resentencing, the court must start fresh and redo the entire sentencing process.") (citation omitted); *U.S. v. Rodgers*, 278 F.3d 599, 602 (6th Cir. 2002) (holding that "[w]hen the remand order does not restrict the district court in its reassessment of its sentence, the court remains free to rely upon 'any legitimate factors' when making its determination, as long as it rules without vindictiveness," quoting, *U.S. v. Bond*, 171 F.3d 1047, 1048 (6th Cir. 1999). Moreover, a sentencing court is not bound by the law of the case to apply the same level of departure for substantial assistance as was applied at a prior sentencing. *Pepper v. United States*, 131 S.Ct. 1229, 1251, 179 L.Ed.2d 196 (2011).

Because the Sixth Circuit issued a general remand in Mr. Romanini's case, this Court should re-sentence him *de novo*. As such, the Court can reconsider all aspects of Mr. Romanini's original sentence including the level of Mr. Romanini's cooperation and even his current level of acceptance of responsibility. In so doing, the Court can and should consider any prior, additional or new relevant evidence when rendering its resentencing decision. Towards that end, Defendant submits this re-sentencing memorandum and further incorporates herein by

reference his prior presentencing filings and the record made before this Court at his initial sentencing.

### III. IN RE-SENTENCING A DEFENDANT, THE COURT MAY ALSO CONSIDER EVIDENCE DEVELOPED AFTER THE INITIAL SENTENCE

A court engaged in re-sentencing is also permitted to consider evidence that has come into existence since the initial sentence. Thus, the United States Supreme Court held in March of 2011 that, "[w]hen a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." *Pepper*, 131 S.Ct. at 1241.

> In addition, evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of postsentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.' § 3553(a)(1). Such evidence may also be pertinent to 'the need for the sentence imposed' to serve the general purposes of sentencing set forth in § 3553(a)(2) - in particular, to 'afford adequate deterrence to criminal conduct,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with needed educational or vocational training ... or other correctional treatment in the most effective manner.' §§ 3553(a)(2)(B)-(D); see *McManus*, 496 F.3d, at 853 (Melloy, J., concurring) ('In assessing … deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct'). Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in §§ 3553(a)(2).

*Id.* at 1242.

In arriving at these conclusions the court reasoned that, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted

person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 1239-1240, quoting, *Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The court went on to note that through 18 U.S.C. § 3661, "Congress could not have been clearer in directing that '[n]o limitation ... be placed on the information concerning the background, character, and conduct' of a defendant that a district court may 'receive and consider for the purpose of imposing an appropriate sentence,' [and that] [t]he plain language of § 3661 makes no distinction between a defendant's initial sentencing and a subsequent resentencing after a prior sentence has been set aside on appeal." *Id.* at 1241. Based upon the above, Mr. Romanini respectfully requests that this Court consider post sentencing rehabilitation as outlined herein at his re-sentencing.

IV. **RECONSIDERATION OF THE COOPERATION POINTS AWARDED MR. ROMANINI IS WARRANTED BY THE FACT THAT MR. ROMANINI PROVIDED INFORMATION ABOUT NEW CHARGES AGAINST FRANK RUSSO AND UPON THE IMPACT THOSE CHARGES HAD ON MR. RUSSO AND OTHERS**

  A. **At The Initial Sentencing, The Government Described The Unique Contribution Of Mr. Romanini's Information And Expressed The Belief That It Impacted The Resolution Of Frank Russo's Case.**

At Mr. Romanini's May 25, 2011 sentencing, counsel for the Government described Mr. Romanini's level of cooperation in the following manner,

> THE COURT: With regard to substantial assistance, the other remaining issue, counsel for the government, would you tell me the basis of your view that the defendant is entitled to substantial assistance?
>
> MS. ROWLAND: Your Honor, this is a very unusual situation. And I believe that he is still entitled to substantial assistance cooperation because even though he concealed probably the most serious aspect of his criminal conduct from the government at the investigative stage, he did provide information

72397064.1                                   5

>about a bribe that he paid to Mr. Russo in the form of providing labor for the installation of a roof on Mr. Russo's residence, and he also provided evidence about an attempt by Mr. Russo to obstruct the investigation by falsely claiming -- by falsely enlisting the name of Mr. Romanini to justify the excess cash that Mr. Russo had. <u>As the Court will recall, Mr. Russo had a rather clandestine meeting with Mr. Romanini at a shrine, and at that meeting suggested to Mr. Romanini that he is going to establish a list of contributors' cash that he received at the time of his son's death and he was going to put Mr. Romanini down for $10,000. That was a false statement. Mr. Romanini had not provided cash in the amount of $10,000 at the time of Mr. Russo's son's death. That obstruction attempt, I think, was an important factor among many, many factors in Mr. Russo's decision to plead guilty in this case. And for that reason, the government would request the substantial cooperation still apply because nothing can change the fact that he did actually substantially contribute to charges in the Russo information and I think also to Mr. Russo's decision to plead guilty.</u>
>(Emphasis added.)

* * *

>THE COURT: So this defendant was just one of many who came forward to assist you with Mr. Russo?
>
>MS. ROWLAND: <u>Yes. I would say, though, that the obstruction scheme was fairly unique, and I think counsel for Mr. Russo recognized that. The fact that we had that evidence of that attempt to obstruct the investigation made our case a lot stronger.</u>
>(Emphasis added.)

Following this statement, the Court understandably questioned the government as to the timeliness of Mr. Romanini's cooperation and whether his failure to disclose additional acts of bribery diminished his value as a witness, to which the Government replied,

>MS. ROWLAND: Your Honor, I would agree with your assessment on factor number 2, the truthfulness issue. That would have severely compromised the defendant in terms of his credibility had he been called upon to testify. I would simply point out that on the timeliness issue, he was timely in the sense that he, when confronted, did consent to an interview. He did not come forward voluntarily. <u>But that timeliness, and the unique nature of that obstruction scheme involving Mr. Russo, was a rather unique</u>

72397064.1     6

> <u>contribution to the Russo investigation</u>.[1]  Further, I would point
> out, as I did at the time of the plea, that after he was confronted
> with -- after he was told that additional information had come into
> the possession of the government, he did immediately come in,
> albeit, you know, he should have done it, obviously, at the
> beginning, <u>he did immediately come in and he actually admitted to
> eight bribes. Mr. Russo had only recalled six of them.  So he did
> come forward with two additional bribes.  And he also, as I said,
> gave information about a scheme that we had at that time been
> unaware of.</u>  And that scheme is under investigation at the present
> time.  So for all those reasons, we would honor our obligation in
> the plea agreement and recommend a four-level reduction.
> (Emphasis added.)

(Romanini Sentencing Tr., pp. 7-12; complete transcript is attached as Exhibit A.)

Without detracting from the seriousness of Mr. Romanini's deception, a relevant point that was not clarified in full at the time of sentencing was that the information provided by Mr. Romanini that assisted in bringing about Mr. Russo's plea was the information about the bribery in the form of the roof and the information about Mr. Russo's obstruction.  This information was provided in a timely fashion during Mr. Romanini's January 29, 2009 and August 20, 2009 interviews.  Indeed, Mr. Romanini provided the information about his meeting with Mr. Russo approximately 17 days after their August 3, 2009 meeting in which Mr. Russo attempted to enlist Mr. Romanini in his scheme.

Mr. Russo submitted to an Information containing both Counts on September 9, 2010. (*See* Counts 12 and 13 of Mr. Russo's Information under Case No. 1:10-cr-00384, attached as Exhibit B.)  It was this set of facts that prompted the Government at Mr. Romanini's initial plea date of October 20, 2010 to remark that, "Your Honor, in light of the guilty plea of Frank Russo, the Defendant's cooperation is substantially complete and there would be no reason to delay sentencing."  (Romanini Plea Tr., p. 43; complete transcript is attached as Exhibit C.)

---

[1] Based on a comment appearing at pages 13-14 of Mr. Romanini's sentencing transcript, it appears that there may have been a misunderstanding as to whether the Government was stressing the uniqueness of the obstruction scheme

**B.     The Government's Cooperation Recommendations In Other County Corruption Matters Before This Court.**

A review of available sentencing transcripts from other county corruption cases before this Court reveal that a significant factor in whether the Government recommended a two point or four point reduction has been whether the Defendant provided merely corroborating information, worthy of two points, or information that directly led to the institution of additional charges, worthy of four points.

For example, in Case No. 1:10-cr-00235, against Mr. Kushmider, it was explained that, "The cooperation of this defendant did assist in resolving the case against Mr. Canepa.  His role was more of as a corroborator of information; therefore, he did not receive the benefit of a four-level 5K."  (Kushmider Sentencing Tr., p. 7; complete transcript is attached as Exhibit D.)  Similarly, in the case against Mr. Monroe, under the same case number, a two-level departure for substantial cooperation was sought because Mr. Monroe provided valuable "corroboration for the testimony of other potential witnesses in this matter. . . ."  (Monroe Sentencing Tr., pp. 9-10; complete transcript is attached as Exhibit E.)

By contrast, with regard to the assistance of Mr. Ozanich under Case No. 1:10-cr-00235, the Government recommended a four point reduction because Mr. Ozanich's "cooperation was essential in developing a case on Mr. Canepa and ultimately was one of the factors, I believe, that led to the resolution of Mr. Canepa's case."  (Ozanich Sentencing Tr., pp. 4-5; complete transcript is attached as Exhibit F.)  Similarly, under the same case number, against Mr. Krause, the Government noted that prosecution of the various contractors who provided kickbacks, "would have been difficult without Mr. Krause, if not impossible" and that they only had

---

or the unique contribution evidence of that scheme had on the Russo investigation.

72397064.1                                                         8

information about three of the schemes before approaching Mr. Krause.  (Krause Sentencing Tr., pp. 6-12; complete transcript is attached as Exhibit G.)

While Mr. Romanini recognizes that not every case is the same and that not all of the factors justifying the four point reductions in Mr. Krause and Mr. Ozanich's cases apply to him, Mr. Romanini's level of cooperation was more akin to those of Mssrs. Krause and Ozanich in that he provided information that led to the prosecution of new charges and that the information provided was significant to the prosecution of those charges as opposed to being merely corroborative.  It is this factor that Defendant believes led to the Government's recommendation of a four-level departure for substantial assistance and forms the bedrock of his current request for a four-level departure.

        **C.**      **The Significance Of Mr. Romanini's Cooperation To The Conviction And Cooperation Of An Individual At The Center Of The County Corruption Scandal.**

Another factor worthy of consideration is the fact that Mr. Romanini's cooperation led to new charges and assisted in the resolution of the case against one of the individuals at the epicenter of the County corruption series of cases as opposed to a low level participant.  As recently as January 14, 2013, *The Plain Dealer* reported that Mr. Russo "gave tens of millions of dollars in business to friends and businesses who gave him hundreds of thousands of dollars worth of free trips, kickbacks and bribes."  Due in part to information provided by Mr. Romanini, Mr. Russo not only pled guilty to two charges, but also received an additional two points to his sentencing guidelines for obstruction of justice.  (Russo Sentencing Tr., p. 4; complete transcript is attached as Exhibit H.)  At his sentencing hearing on December 15, 2010, it was revealed that approximately two weeks prior, Mr. Russo, through his counsel, indicated an interest in cooperating in the county corruption investigation and testifying if needed.  (Russo

Tr., pp. 27-28.) Mr. Russo went on to testify against former Cuyahoga County Court of Common Pleas Judges Bridget McCafferty and Steven Terry as well as Jimmy Dimora, each resulting in convictions.

As a result, when reviewing the level of his cooperation, Mr. Romanini respectfully requests that the Court consider: (1) the independent nature of the information provided against Mr. Russo; (2) the impact of that information; (3) the timeliness of the initial information provided that resulted in the charges brought against Mr. Russo; and (4) the larger significance of who Mr. Romanini provided information against and the role that information played in the totality of the county corruption cases.

V.  SECTION 3553(A) FACTORS

Pursuant to 18 U.S.C. 3553(a)'s directive, the district court is to "impose a sentence sufficient, but not greater than necessary, to comply with" the basic aims of sentencing. Mr. Romanini's May 16, 2011 Sentencing Memorandum thoroughly describes his offenses, background of hard work, family devotion, good will toward his fellow man and community service and does not bear repeating here as they are a part of the record. Indeed, the Court made mention of reviewing the many letters submitted to the Court speaking of Mr. Romanini's good works.

What bears mentioning now is how Mr. Romanini has conducted himself during the last 18 months of incarceration and the beneficial impact it has had on him and those around him. Taking every opportunity to accept his position and continue to move his life in a positive direction, Mr. Romanini has completed classes available to him in wellness, nutrition, yoga, commercial driving and astronomy. He helps his fellow inmates with life and business advice. He has paid his restitution and fines. He sufficiently impressed his case manager to be one of

only three others recommended to perform work for the Public Service Department of the City of Morgantown, which he gladly accepted and performed.

More importantly however, Mr. Romanini has been stripped of the arrogance that led him to believe that he could manipulate the affairs of government to feed his own sense of self importance. Gone is the man who placed self preservation above truth and public duty. No longer does Mr. Romanini view his actions as those of a misguided man trying to help others. What he sees now is an individual who placed the futures of those he loved in jeopardy of prosecution. Mr. Romanini's wife, who travels to Morgantown to visit her husband every weekend and federal holiday and speaks to him nightly has heard and seen the changes. She has tried to express those changes in her letter to the Court, a copy of which is attached as Exhibit I. At his resentencing, Mr. Romanini will seek the opportunity to express to the Court the changes he has made and seen in himself through acceptance, self reflection and hard work.

In sum, all of the factors that warranted a sentence at the low end of Mr. Romanini's original guideline range exist to a larger extent today. He is a humbled man and in that respect, the intended effect of incarceration upon Mr. Romanini has been achieved. He therefore respectfully requests that should he be provided downward departures not previously awarded that he be sentenced to the low end of the resulting guideline range.

## VI. REDUCTION OF POST RELEASE CONTROL

Mr. Romanini's term of supervised release is governed by U.S.S.G. § 5D1.2(a)(2). (*See* Presentence Report.) That section of the sentencing guideline provides for a term of supervised release of "at least one year but not more than three years." The factors to be considered in determining the length of supervised release are governed by Application Note 3 to § 5D1.1. *See* Application Note 4 to § 5D1.2. Those factors mirror those of 18 U.S.C. § 3553(a).

In this case, based upon the evidence presented at the original sentence and at resentencing, these factors warrant the minimum term of supervised release of one year. The dangers of further crimes from this Defendant are *de minimis*. He has no criminal history, no substance abuse issues, will be returning to a stable family environment and has demonstrated sincere remorse for his crimes. As a result Defendant requests that the minimum term of supervised release be imposed.

## VII. CONCLUSION

Based upon all of the above, Defendant respectfully requests that the Court reconsider the factors leading to Mr. Romanini's original sentence, consider evidence of the larger impact of Mr. Romanini's assistance in the investigation and prosecution of Frank Russo, consider Mr. Romanini's postsentencing rehabilitation and impose a lesser sentence.

Respectfully submitted:

*/s/ Charles A. Bowers*
Charles A. Bowers (0064075)
*cbowers@taftlaw.com*
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
Phone: (216) 241-2838
Fax: (216) 241-3707

Ralph W. Kohnen (0034418) (admitted *pro hac* vice)
*kohnen@taftlaw.com*
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205

*Attorneys for Defendant, Ronald Romanini*

## CERTIFICATE OF SERVICE

  I hereby certify that on January 15, 2013, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


        */s/ Charles A. Bowers*
        Charles A. Bowers (0064075)
        cbowers@taftlaw.com

        *One of the Attorneys for Defendant, Ronald Romanini*